IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JILL REED, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 13-2284-JAR |
| | ) |
| MILESTONE LAW GROUP, | ) |
| | ) |
| Defendant. | ) |

### DEFAULT JUDGMENT

Plaintiff filed her Complaint in this matter on June 12, 2013, alleging claims the Defendant violated the Fair Debt Collection Practice Act ("FDCPA"). The Clerk entered default on July 23, 2013, after it was shown that Defendant had been served but failed to answer or otherwise respond.[1] This case is before the Court on Plaintiff Jill Reed's Motion for Default Judgment (Doc. 6) against Defendant Milestone Law Group. Defendant has not responded or appeared in this matter.[2] The Court has reviewed Plaintiff's motion and attached exhibits and finds that default judgment should be entered in favor of Plaintiff and against Defendant Milestone Law Group as set forth below.

*Standard*

Following entry of default, Rule 55(b)(2) allows the court to enter default judgment. Once default is entered, the defendant is not entitled to defend itself on the merits.[3] But a default

---

[1] Doc. 5.

[2] The motion was sent by regular mail to these defendants on October 14, 2013. *See* Doc. 6 at 9. The response time has elapsed, *see* D. Kan. R. 6.1(d), with no response on file.

[3] *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 & n.11 (10th Cir. 2003).

judgment only establishes liability; it does not establish the amount of damages.[4] The factual allegations in the Complaint are taken as true, except for those relating to the amount of damages.[5] "'Damages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts.'"[6] Default judgment may only be entered against defendants whom the court determines are not minors or incompetent persons.[7] There is no evidence in the record that Defendant, a law group, is a minor or incompetent person and accordingly, the Court may enter default judgment against it.

Plaintiff seeks money damages and attorney fees and costs. Based on the factual allegations in the Complaint and the detailed affidavits submitted by Plaintiff, the default in this case establishes that Defendant violated the FDCPA. According to the Complaint, on or about March 7, 2013, Plaintiff received a telephone call from Mr. Joseph Sanchez, who stated that he was calling on behalf of Defendant Milestone Law Group. During the course of the telephone call, Defendant advised Plaintiff that it represented Global Group Holdings ("GGH") relative to a debt allegedly owed by Plaintiff. Sanchez accused Plaintiff of writing a "bad check" for $858 on December 6, 2010, and threatened to have Plaintiff arrested for check fraud if she did not pay $1350, the amount he told her was owed on the debt. Sanchez, on behalf of Defendant, further

---

[4] *See, e.g.*, *DeMarsh v. Tornado Innovations, L.P.*, No. 08-2588, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009); *Beginner Music v. Tallgrass Broad., LLC*, No. 09-4050-SAC, 2009 WL 3720180, at *1 (D. Kan. Aug. 12, 2009).

[5] *See, e.g.*, *Beck v. Atl. Contracting Co.*, 157 F.R.D. 61, 64 (D. Kan. 1994).

[6] *Demarsh*, 2009 WL 3720180, at *2 (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538 1544 (11th Cir. 1985)).

[7] Fed. R. Civ. P. 55(b).

threatened to file a lawsuit against Plaintiff for breach of contract if she did not pay $1350. Defendant failed to advise Plaintiff that it was a debt collector, that it was attempting to collect a debt, and that any information obtained would be used for that purpose.  At no time during the course of the telephone call did Sanchez apprise Plaintiff that he is not an attorney.

Subsequent to the telephone call between Plaintiff and Defendant, Plaintiff initiated a call to GGH and asked if she owed an outstanding debt.  GGH apprised Plaintiff that it had checked its database and that she did not owe a debt to GGH.  All of these facts establish that Defendant violated the FDCPA under several sections:

a. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;
b. Falsely represented either directly and/or by implication that he was an attorney and/or that the communication was from an attorney in violation of 15 U.S.C. §1692e(3);
c. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);
d. Falsely represented or implied that a consumer committed a crime or other conduct in order to disgrace the consumer in violation of 15 U.S.C. §1692e(7);
e. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);
f. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and,
g. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

Having established liability for violation of the FDCPA, the Court now turns to the issues of damages and other relief.

*Actual Damages*

The FDCPA allows actual damages for personal humiliation, embarrassment, mental anguish, or emotional distress.[8] District courts have split over whether claims for emotional distress damages under the FDCPA are evaluated under the state tort law standard for intentional infliction of emotional distress ("IIED") or a more lenient standard.[9] In *Bieber v. Associated Collection Services, Inc.*, Judge Kelly stated that "[§ 1692d] prohibits a debtor's tender sensibilities only from oppressive and outrageous conduct," borrowing some IIED terminology.[10] However, when the question of emotional distress damages under § 1692d has been directly presented, the majority of courts, including other district courts in the Tenth Circuit, "have found that the FDCPA does not require a plaintiff to satisfy state tort law standards to prove emotional distress damages."[11] This Court has previously found the majority's reasoning persuasive and ruled that the plaintiff need not establish the elements of a claim for IIED under state law in order

---

[8]*Santacruz v. Standley & Assocs., LLC*, No. 10-cv-00623-CMA-CBS, 2011 WL 1043338, at *6 (D. Colo. Mar. 17, 2011).

[9]*Compare id.* (holding that a plaintiff need not establish the elements of a claim for IIED under state tort law to sustain an FDCPA claim for emotional distress), *with Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1077-78 (E.D. Cal. 2007) (holding that a plaintiff is required to establish the elements of a claim for IIED under state tort law to sustain an FDCPA claim for emotional distress); *Burns v. Anderson, Crenshaw, & Assocs., LLC*, No. 07-cv-1192, 2008 WL 8834614, at * (D. Colo. Aug. 15, 2008).

[10]631 F. Supp. 1410, 1417 (D. Kan. 1986).

[11]*Santacruz*, 2011 WL 1043338, at *6; *see also Riley v. Giguiere*, 631 F. Supp. 2d 1295, 1314-16 (E.D. Cal. 2009) (reasoning that, since the Ninth Circuit allows recovery for emotional distress damages under the Fair Credit Reporting Act without meeting state tort law standards, the same relaxed standard is also applicable to emotional distress claims under the FDCPA, since "[b]oth statutes have similar purposes and both include identical provisions regarding a plaintiff's recovery for actual damages"); *Davis v. Creditors Interchange Receivable Mgmt., LLC*, 585 F. Supp. 2d 968, 971 (N.D. Ohio 2008) (concluding that requiring plaintiffs to meet state tort law standards would "undermine, if not defeat entirely the Congressional objective of national uniformity in the [FDCPA]'s application and enforcement").

to recover actual damages under the statute.[12]

Under this line of authority, a plaintiff may rely on "her own testimony to establish emotional distress damages, provided that it is sufficiently detailed and does not rely on conclusory statements."[13] Here, Plaintiff has submitted an affidvait concerning her emotional distress damages. In her affidavit, Plaintiff explains that she panicked when Sanchez threatened to have her arrested for check fraud during the March 7, 2013 phone call. She is a government worker with a security clearance, so she worried about losing her job as a result of this accusation. She was "terrified" that she could be arrested at work and that she would be unable to provide for her children. Plaintiff also states that she was worried about defending herself, and paying attorneys' fees, in the breach of contract suit that Sanchez threatened. Plaintiff states that she suffered humilation, embarrassment, mental anguish, and emotional distress in the form of lack of sleep, fear of losing her job and therefore her livelihood, and deep concerns about providing for her children in the event she was arrested and/or lost her job. She seeks $3500.

While Plaintiff's affidavit sufficiently establishes that she suffered some anxiety and fear as a result of Defendant's FDCPA violation, the Court is unable to find that Plaintiff's affidavit is detailed enough to justify her request for $3500. Plaintiff received a single phone call from Defendant, followed by Plaintiff's phone call to the creditor which established Plaintiff owed no debt. Plaintiff does not explain in her affidavit how long her fear of arrest continued after the March 7, 2013 phone call, nor why she continued to reasonably fear arrest given that the creditor confirmed that no debt was owed. Given this lack of detail, the Court is unable to find that

---

[12]*Webb v. Premiere Credit of N. Am.*, No. 12-2001-JAR, Doc. 27 (June 20, 2012).

[13]*Santacruz*, 2011 WL 1043338, at *6.

Plaintiff's loss of sleep and fear of arrest are sufficient to justify an award of $3500. The Court finds that the record supports an award of $1500 for the anxiety and stress caused by the threatening phone call she received from Defendant.

*Statutory Damages*

Even though Plaintiff fails to prove she sustained any actual damages, statutory damages are still available under the FDCPA, subject to the court's discretion.[14] Under the statute, the court must consider, among other relevant factors: (1) the frequency and persistence of noncompliance by the debt collector; (2) the nature of such noncompliance, and (3) the extent to which such noncompliance was intentional. The Court has already noted that this case involved a single phone call by the debt collector, however the Court finds that the nature of Defendant's noncompliance, as well as the intentional nature of the conduct, weigh in favor of a statutory damages award. Defendant threatened and misled Plaintiff, making her believe that she could be subject to criminal penalties. And the nature of the threats suggests intentional conduct—Defendant could not have had Plaintiff arrested for check fraud. Such conduct is clearly abusive and warrants a statutory damages award in the amount of $1000.

*Attorney Fees*

Under the statute, Plaintiff is entitled to an award of reasonable attorney fees and costs under § 1692k(a)(3). Plaintiff submits counsel's time records and requests attorney fees in the amount of $2735.50, representing 11.7 hours of work by five different timekeepers. Plaintiff seeks $465 in costs.

Once a party has established its entitlement to fees, the court must determine what fee is

---

[14] 15 U.S.C. § 1692k(a)(2); *O'Connor v. Check Rite, Ltd.*, 973 F. Supp. 1010, 1020 (D. Colo. 1997).

reasonable. In determining reasonable attorney's fees, the court arrives at a lodestar figure by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate.[15] The applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.[16] Once an applicant has met this burden, the lodestar figure is presumed to be a reasonable fee.[17]

In order for the applicant to satisfy its burden of proving the number of hours reasonably spent on the litigation, the party must submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."[18] "The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."[19] The Court "is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time."[20] The Court finds that Plaintiff has submitted evidence that a reasonable amount of time was spent on this litigation. This litigation was resolved by default judgment, and the 11.7 hours were spent on investigating the facts and preparing filings in this case. The majority of work was accomplished by a paralegal.

---

[15] *Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

[16] *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249–50 (10th Cir. 1998).

[17] *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

[18] *Case*, 157 F.3d at 1250 (citation omitted).

[19] *Robinson*, 160 F.3d at 1280.

[20] *Id.* (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995)).

...

Calculating the lodestar also requires the court to examine the hourly rate requested by the Plaintiff, which ranges from $115 to $395 per hour.  In examining the hourly rate, the court is to refer "to the prevailing market rates in the relevant community."[21]  The relevant community is the place where the litigation occurs.[22]  "The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time."[23]  In making this determination, if the court does not have before it adequate evidence of prevailing market rates, the court may, in its discretion, "use other relevant factors, including its own knowledge, to establish the rate."[24]

In this case, Plaintiff has not provided any evidence establishing the prevailing market rate in the Kansas City area.  Instead, Plaintiff submits the Laffey Matrix, which was prepared by the Civil Division of the United States Attorney's Office for the District of Columbia.  It is intended to be used in cases involving fee-shifting statutes, to aid in the Court's determination of a reasonable rate.  The explanatory notes make clear that these are prevailing rates in the Washington, D.C. area.[25]  This evidence does not establish the prevailing market rate for the Kansas City area.  However, the Court finds, based on its own knowledge of prevailing market rates in the Kansas City area, that $290 per hour is a reasonable rate for counsel with extensive

---

[21]*Blum v. Stenson*, 465 U.S. 886, 895 (1984).

[22]*Jayhawk Investments, L.P. v. JetUSA Airlines, Inc.*, No. 98-2153-JWL,1999 WL 974027, at *4 (D. Kan. 1999) (citation omitted).

[23]*Case*, 157 F.3d at 1256.

[24]*Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) (citing *Case*, 157 F.3d at 1257).

[25]Doc. 6, Ex. C, note 3.

FDCPA experience of between seven and ten years.[26] The Court therefore reduces the requested rate for attorneys Larry Smith and David Marco to $290 per hour. The Court finds that the $265 rate requested for attorney Mandy Shell is reasonable in light of her seven years of experience. The Court finds that the rates of $225 for attorney Angel Bakov and the paralegal rate of $115 are reasonable. Applying these rates to the number of hours reasonably spent, the lodestar figure is (3.1 hours x $290) + (.2 hour x $290) + (1.2 hours x $265) + (2.7 hours x $225) + (4.5 hours x $115) = $2400. The Court finds that an attorney fee award in this amount is reasonable.[27] The Court also finds that Plaintiff is entitled to $465 in costs.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Default Judgment (Doc. 6) is **GRANTED** and that the Clerk of the Court shall enter judgment for Plaintiff as follows:

1. $1000.00 in statutory damages for Defendant's violation of the Fair Debt Collection Practices Act;

2. $1500.00 in actual damages, as established by Plaintiff's affidavit, for Defendant's violation of the Fair Debt Collection Practices Act;

3. $2400.00 in attorneys' fees; and

4. $465.00 in costs;

for a Total Judgment in the amount of $5365.00.

**IT IS SO ORDERED**.

---

[26] *See Wilkinson v. I.C. Sys., Inc.*, No. 09-2456-JAR, 2011 WL 5304150, at *3 (D. Kan. Nov. 1, 2011).

[27] "The lodestar is the presumptively reasonable fee." *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 1994). But "'[t]he product of reasonable hours times a reasonable rate does not end the inquiry,' however, of determining whether a fee is reasonable." *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1103 (10th Cir. 2005) (quoting *Hensley v. Eckerhart*, 461 U.S. 434 (1983)). The court may adjust the lodestar downward if necessary. *Metz*, 39 F.3d at 1493. The Court does not find that a downward adjustment is necessary under the circumstances of this case.

Dated: December 13, 2013

    S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE